IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| **James York,** ) | | |
| Plaintiff, ) | | Case No: 15 C 1137 |
| ) | | |
| v. ) | | |
| ) | | Judge Ronald A. Guzmán |
| **Robert A. MacDonald, Secretary U.S.** ) | | |
| **Department of Veterans' Affairs, and** ) | | |
| **Department of Veterans' Affairs,** ) | | |
| Defendants. ) | | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion for summary judgment [34] is granted. Civil case terminated.

## STATEMENT

Plaintiff James York brings his sixth federal case alleging employment discrimination against the Secretary of the United States Department of Veterans' Affairs, who in this case is Robert A. MacDonald. York alleges age discrimination and retaliation after not having been hired by Defendant for the position of assistant chief of Environmental Management Services, otherwise known as Assistant Housekeeping Officer. Defendant moves for summary judgment which, for the reasons stated below, is granted. The parties agree that the Department of Veterans' Affairs is not a proper defendant in this case, so the Court dismisses the VA from this case with prejudice.

**I.** **Facts**

York started working for the Department of Veterans' Affairs ("VA") in 1974, and retired in March 2011. (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 41, ¶¶ 6-7.) At the time of his retirement, York was one of several section chiefs in Hines Hospital's Environmental

Management Services ("EMS"). (*Id*. ¶ 8.) Almost three years after York retired, in January 2014, the VA posted a job announcement for the position of the Assistant Housekeeping Officer, otherwise known as the assistant chief of EMS, at the GS-12 pay level. (*Id*. ¶ 9.) The announcement contained the following:

> QUALIFICATIONS REQUIRED:
>
> To qualify for this position, applicants must meet all requirements by the closing date of this announcement [January 27, 2014].
> Time-in-grade: Applicants who are current Federal employees and have held a GS grade any time in the past 52 weeks must also meet time-in-grade.
> Specialized Experience: Applicants must have one year of specialized experience equivalent to at least the next lower grade (GS-11) in the normal line of progression for the occupation in the organization. Examples of specialized experience would typically include, but are not limited to:
> — Experience that demonstrates a practical working knowledge of the basic principles of chemistry, biology, and bacteriology as applied to environmental sanitation, infection control, and to the choice and use of antimicrobial agents in the disinfection, sanitization, and/or sterilization of surfaces and equipment in a health care environment.
> — Experience in laundry and linen management in a health care environment.
> — Experience that demonstrated a knowledge of waste management, including the requirements relating to hazardous, toxic and infectious wastes, and provisions for their final disposition In a health care environment. There is no educational substitution for the GS-12 level.

(*Id*. ¶ 10.) York applied for the EMS assistant chief position, at which time he was 59 years old. (*Id*. ¶¶ 11-12.)

In January 2014, Malcolm Heags was a section chief in EMS at Hines, where he had worked since 1984 and was in his position at his grade level for over 20 years. (*Id*. ¶¶ 13-14.) During Heags' career with the federal government, he never held a General Schedule ("GS") position. (*Id*. ¶ 15.) Heags also applied for the position of the assistant chief of EMS at which

time he was 50 years old, about nine years and two months younger than York. (*Id.* ¶¶ 16-17.) In January 2104, Juan Burks was the chief of EMS at the Hines VA Hospital, a position he had held since 2009. (*Id.* ¶ 18.) Both York and Heags had worked as EMS section chiefs under Burks. (*Id.* ¶ 19.)

Burks was the selecting official for the EMS assistant chief position. (*Id.* ¶ 20.) Applicants for the position submitted the required paperwork as listed in the announcement to the Office of Personnel Management where they were reviewed, rated, and all qualified applicants were placed on a certificate for referral to the selecting official for consideration. (*Id.* ¶ 21.) There were 11 qualified candidates placed on that certification, including both York and Heags, and Burks knew that all the candidates were experienced in the field of EMS sanitation. (*Id.* ¶ 22.) As the selecting official, Burks could have chosen to select a candidate directly off of the certification, but if he elected to interview one candidate, then all candidates referred would have to be interviewed pursuant to VA policy. (*Id.* ¶ 23; Pl.'s Ex. 4, Dkt. # 41, at 12, ¶ 7.) Burks chose to have all the candidates interviewed. (*Id.* ¶ 24.) Burks selected three supervisors at Hines who, based on his professional relationships with them and his knowledge of their work history, he deemed to be "subject matter experts" qualified to be members of the panel. (*Id.* ¶ 25.)

The three first-round interviewers were Pam Niemiec, Sheryl Washington, and Chris Beattie. (*Id.* ¶ 26.) Burks selected the three to do the interviewing because he knew that Beattie had prior experience as an EMS chief and worked with EMS very closely over his career; Niemec was an infection control practitioner who worked and trained EMS personnel in blood-borne pathogens, microbiology, and microorganisms; and Washington was a performance

3

improvement quality systems specialist who worked with EMS on their its performance improvement for several few years. (*Id*. ¶ 27.) Burks believed that the three first-round interviewers were EMS subject matter experts. (*Id*. ¶ 28.)[1]

Burks testified that he did not discuss York's age or his prior EEO activity with any of the first-round interview panelists. (*Id*. ¶ 29.) The interviews consisted of performance-based interview questions, and each candidate was asked the same ten questions. (*Id*. ¶ 30.) The questions were selected by Burks, who believed they were appropriate for the position to be filled, though York believes otherwise. (*Id*. ¶ 31.) The panel interviewed York as well as 9 other candidates; one was a "no show" for the interview. (*Id*. ¶¶ 32-33.)

The panel members explained to York that they would be asking him a series of questions
based on the performance-based interview process, and they would be evaluating his answers to the questions. (*Id*. ¶ 34.) York knew this to be a standard type of interview, and York was asked and gave answers to ten questions during his interview. (*Id*. ¶¶ 34-35.) The panel members did not mention York's prior EEO activity or his during the interview. (*Id*. ¶ 36.) After the first-round interviews were competed, the panel added up their scores and provided them to Burks. (*Id*. ¶ 38.) The EMS Interview Date & Summary Sheet (Def.'s Ex. J) indicates that the top scorers from the first-round interviews were:

> (1) Jude James Fritz — 139 pts
> (2) Orlando Taylor — 137 pts

---

[1] York contends that Defendant has set forth no admissible evidence that these individuals were subject matter experts, which VA policy defines as "a person with bona fide knowledge about what it takes to do a particular job." (*Id*. ¶ 27.) However, York points to no evidence contradicting Burks' belief.

4

        (3) Malcolm Heags — 133 pts
        (4) James York — 120 pts
        (5) Gerald Moody — 117 pts.

(*Id.* ¶ 39.) Burks testified that because the top three scorers were in a tight grouping points-wise (six point separation), but there was a 13 point drop-off to the fourth highest score (*i.e.*, York), Burks chose to select only the applicants with the top three scores for a second round of interviews. (*Id.* ¶ 40.) Burks further stated that when making his selections for the second round of interviews, Burks considered only the scores from the first-round performance-based interview rankings. (*Id.* ¶ 41.)

For the second round of interviews, Burks indicated that he selected three interviewers who were at least at the GS-12 level, and who "were probably already chiefs." (*Id.* ¶ 42.) None of the three second-round interviewers was on the first-round interview panel. (*Id.* ¶ 43.)

The second-round interview panel ranked the top three candidates as follows:

        (1) James Jude Fritz — 20.5 pts
        (2) Malcom Heags — 18 pts
        (3) Orlando Taylor — 15 pts

(*Id.* ¶ 44.) Although Fritz was contacted for an interview, he did not respond to at least two phone calls, and never called back to provide a date as to when he would be available. (*Id.* ¶ 46.) Fritz attests by affidavit that he was never contacted. (*Id.*) Burks then decided to interview the candidate ranked second by the second-round interview panel, Malcolm Heags. (*Id.* ¶ 48.) Burks believed that Heags had not only managerial experience but also the ability to provide good customer service and the communication skills necessary to handle emergent situations, equipment needs, and process planning. (*Id.* ¶ 49.) Burks selected Heags for the EMS assistant chief position. (*Id.* ¶ 50.) In May 2014, York filed a complaint alleging age discrimination and

retaliation. (*Id*. ¶ 57.)

## II. Summary Judgment Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc*., 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist*., 743 F.3d 524, 528 (7th Cir. 2014).

## III. Analysis

### A. Age Discrimination

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff suing under the ADEA may establish discrimination directly or indirectly through the burden-shifting approach used in *McDonnell Douglas Corporation. v. Green*, 411 U.S. 792 (1973). *See Cerutti v. BASF Corp*., 349 F.3d 1055, 1060 (7th Cir. 2003). "[W]hether a plaintiff proceeds under the

direct or indirect method of proof, the ultimate standard is the same: the plaintiff must demonstrate that the employer would not have made the adverse employment decision in question but for his membership in a protected class." *Cerutti*, 349 F.3d at 1061–62; *see also Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009) (holding that in ADEA disparate treatment cases, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision").

"A plaintiff proceeding under the direct method survives summary judgment by creating triable issues as to whether discrimination motivated the adverse employment action." *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114 (7th Cir. 2009). Under the direct method, a plaintiff can establish discriminatory intent by relying on direct or circumstantial evidence that the decisionmaker acted for a prohibited reason. *Rogers v. City of Chi.*, 320 F.3d 748, 753–54 (7th Cir. 2003); *see also Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) ("The focus of the direct method of proof . . . is not whether the evidence offered is 'direct' or 'circumstantial' but rather whether the evidence 'points directly' to a discriminatory reason for the employer's action."). Relevant circumstantial evidence includes suspicious timing, ambiguous statements, behavior toward or comments directed at other employees in the protected group, evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment, or evidence that the employer offered a pretextual reason for an adverse employment action. *Alexander v. Casino Queen, Inc*., 739 F.3d 972, 979 (7th Cir. 2014).

York relies on several pieces of circumstantial evidence to make a showing of age discrimination under the direct method. York first argues that shortly after Burks became York's

7

supervisor in 2009, Burks commented that the other supervisors and section chiefs were "set in their ways." (Pl.'s Resp., Dkt. # 42, at 7.) "Remarks can raise an inference of discrimination when they are made (1) by the decision-maker, (2) around the time of the decision, and (3) in reference to the adverse employment action." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 885 (7th Cir. 2016) (citation and internal quotation marks omitted). Even assuming Burks' comment refers to age, it was not made around the time that Burks failed to hire York for the EMS assistant chief position nor was it in reference to the failure to hire York; it is therefore not evidence of age discrimination. *Tank v. T–Mobile, USA, Inc.*, 758 F.3d 800, 806 (7th Cir. 2014) ("[I]solated comments made over a year before the adverse action are not evidence of discrimination under the direct method.").

York also contends that the reasons provided by Burks for hiring Heags are unworthy of belief. Specifically, York argues that Burks lied about having contacted Fritz for the position prior to hiring Heags, and failed to follow VA selection procedures. (Pl.'s Resp., Dkt. # 42, at 7.) In support, York points to an affidavit by Fritz in which he attests that he applied for the EMS assistant chief position, was interviewed twice but, to the best of his recollection, was not contacted again by Hines. (Pl.'s Resp. Def.'s Stmt. Facts, Fritz Decl., Dkt. # 41, Ex. 2.) Defendant seeks to strike Fritz's affidavit on the ground that Fritz was not disclosed in York's Rule 26(a)(1) disclosures. However, the Court finds that Defendant clearly knew of Fritz's identity and his relevance to Burks' decisionmaking process; thus, the lack of disclosure was harmless. *See* Fed. R. Civ. P. 37(c)(1). Nevertheless, York proffers Fritz's declaration that he was not contacted by the VA to show that Burks' reason for hiring Heags was pretextual, or, in other words, not worthy of belief. *Holshouser v. Abbott Labs.*, 31 F. Supp. 3d 964, 971–72

8

(N.D. Ill. 2014) ("It is well-settled in this Circuit and others that, where an employer honestly believes the reasons provided for a[n] [adverse action] . . . , a plaintiff cannot establish pretext, even if those reasons were wrongheaded in some manner.").

But the relevant issue is whether Burks' reason for not hiring *York* is worthy of belief, not whether Burks' purported basis for hiring Heags and not Fritz is worthy of belief. Therefore, the Court does not find that the veracity of Burks' assertion that, despite having reached out to him, Fritz did not contact the VA with potential interview dates and times to be relevant or material to York's claim and accordingly, does not preclude summary judgment in Defendant's favor.[2]

York further asserts that discrimination can be directly inferred from the fact that Burks did not follow VA policy because he was supposed to give preference to veterans (*i.e.*, York). In addition, Burks conceded that he could have selected directly from the certificate of candidates, which included York, whose qualifications and experience Burks was familiar with, but instead "chose to go with a hand-picked interview panel of individuals who were not SMEs as required by VA policy, but who happened to [be] aware of York's prior protected activity and that he had retired." (Pl.'s Resp., Dkt. # 42, at 7.) But York does not point to any evidence that Burks was required to hire a veteran or select directly from the certificate of candidates; indeed, the evidence demonstrates that the relevant policy did not so require. Burks followed VA policy by interviewing all qualified candidates who had been listed on the certificate of candidacy. Simply

---

[2] The Court notes that the record does not contain evidence of Fritz's age, to the extent that it is relevant.

because Burks did not choose York is not a sufficient basis on which to allow York to argue age discrimination to a jury.

York next asserts, based on his statements in a declaration he submitted in support of his response to the summary judgment motion, that the interview questions that were used at the first-level interviews were not "appropriate for the level of position at issue and had no bearing on the duties of the position." (*Id.*)  But, as Defendant notes, York's attestation to this point directly conflicts with the testimony he gave to the EEO investigator.  When asked twice by the investigator whether the questions being asked at the interview were "okay" and "appropriate" for the position that was being filled, York responded, "Yes."  (Def.'s Ex. I, Dkt. # 44, at Page 49 of 117.)  The Seventh Circuit "do[es] not allow litigants to manufacture material fact questions by affidavit testimony that contradicts prior sworn testimony."  *United States v. Funds in Amount of $100,120.00*, 730 F.3d 711, 718 (7th Cir. 2013).  Therefore, the Court will not consider York's assertion that Burks did not follow VA policy by not asking appropriate questions at the first round of interviews.

York also briefly notes that panel member first-round interviewer Washington stated that panels are used to provide "the appearance of fairness" in hiring decisions and believes that Heags was given the questions in advance. (*Id.* at 8.)  But an appearance of fairness is not indicative of age discrimination.  Further, the evidentiary basis for Washington's opinion that Heags was given questions ahead of time is pure speculation.  At her deposition, Washington was asked, "Did [Heags] seem to be pretty much aware in advance of all 10 of those questions, to be prepared for all of them from what you recall?".  She responded, "Yeah."  (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 41, Ex. 9, Washington Dep., at Page 267 of 302.)  This exchange does

10

not provide a basis upon which the Court can find a genuine issue of material fact regarding whether York was discriminated against based on his age.

In a similar vein, York asserts that "there is evidence that Heags was preselected which would undercut the stated reason for Heags' selection." (Pl.'s Resp., Dkt. # 42, at 8.) In support, York argues that Rene, Heags' future wife and Burks' former assistant, applied for a transfer in November 2013, before the interviews for the EMS position took place, because she knew Heags was going to get the EMS position and he could not act as her immediate supervisor given their relationship. York attests in his affidavit in opposition to Defendant's motion for summary judgment that, "I have no doubt that [Heags' selection] was orchestrated by Mr. Burks and Ms. Rene, Heags' wife, both of whom I filed charges against in the past, for non-selection." (Pl.'s Resp., Dkt. # 41, Ex. 1, York Decl., ¶ 19, at Page 29 of 302.) As with Washington's testimony, York's assertion is apparently based entirely on conjecture as York points to no other evidentiary basis supporting this statement; therefore, it does not create a genuine issue of material fact regarding whether age discrimination occurred. And, as noted by the government, even if Heags had been preselected because he was Rene's future husband, this is not evidence of age discrimination, as any such favoritism affects all individuals, young or old, equally. *Preston v. Wis. Health Fund*, 397 F.3d 539, 541 (7th Cir. 2005).

York's contention that Burks' purported failure to follow VA policy constitutes evidence of age discrimination is also unavailing. York attaches various pages from the VA Handbook and highlights certain passages, arguing that Burks did not follow the proper procedures in deciding who to hire for the EMS position. In particular, York notes that Part II, Chapter 2 of the VA Handbook 5005, Section A.2.b. provides that "VA positions will be filled by selection

11

from among those well-qualified individuals available through the recruitment method(s) used. Such persons will be placed in positions where their education, experience, training, aptitudes, abilities, interests, and personal traits best fit them for successful performance." (Pl.'s Resp. Def.'s Stmt. Facts, Dkt. # 41, Ex. 3, VA Handbook, at Page 37 of 302.) Referencing this provision, York asserts that "Burks claims that he based his selection decision on the scores" from the interview panels, and therefore violated VA policy because he did not consider York's "education, experience, status as a veteran, or any other factor," and had to have ignored such qualifications in order to deny York the job. But the Court cannot consider the excerpts of the Handbook York cites to because they have not been authenticated.

"To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 496 (7th Cir. 2006). York fails to include an affidavit of a person with knowledge who attests that the version of the handbook York attaches is proper, or that the sections he cites to were (or should have been) applicable to the relevant hiring decision. Indeed, Defendant contends (also absent a supporting affidavit) that a portion of the referenced material from Chapter 2 was not applicable here because the EMS Assistant Housekeeping Officer was a promotion, not a recruitment of new VA employees. The Court need not resolve the competing assertions because neither party has authenticated the documents, so the Court will not consider the handbook in its consideration of the Defendant's motion. *See Langreder v. Freeman Expositions, Inc*, No. 13-CV-0371, 2016 WL 537953, at *6 (N.D. Ill. Feb. 11, 2016). In any event, York misreads the policy, which states only that positions will be filled "by selection" from qualified individuals, who will be

placed in positions best-suited to them. Simply because Burks relied on the scores from the interview panel does not mean that he (or the panel) did not consider the various candidates' qualifications, which included not only their education and experience but also their abilities, interests, and personal traits.[3]

The Court notes that almost all of the evidence York presents in support of the direct method relates to pretext, which is insufficient to establish age discrimination. *See Van Antwerp v. City of Peoria*, 627 F.3d 295, 298 (7th Cir. 2010) ("We also note that, assuming [the plaintiff] marshaled enough circumstantial evidence to show pretext, his claim of discrimination under the direct method would still fail. Evidence offered under the direct method must allow a jury to infer more than pretext; it must itself show that the decisionmaker acted because of the prohibited animus." (internal quotation marks and citations omitted)).

Ultimately, York believes he should have been hired instead of Heags, but "[a] plaintiff's contention that he is the better candidate for a vacancy constitutes nothing but the employee's own opinion as to his qualifications," and cannot create a genuine issue of material fact. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002). While York has a Masters in Business Administration and Heags does not, the position announcement did not require any formal education at all; thus, York's advanced degree does not mean he was better qualified for

---

[3] To the extent York contends that he should have been given preference for hiring based on his status as a veteran, he again fails to cite any relevant authority for this assertion or support it with any affidavit attesting that such a preference was applicable in the instant situation. York fails to rebut Defendant's assertion that the veteran preference applies only to entry into federal service, not promotions, as was the EMS Assistant Chief position. (Def.'s Ex. E, Dkt. # 36, at Page 52 of 130.) According to the government, York's veteran status allowed him to apply for the position in the first place, which he otherwise would not have been entitled to do given that he had retired. (Def.'s Reply, Dkt. # 43, at 13.) Having applied, he was found qualified and was considered for the position with the other qualified candidates. (*Id.*)

the position. Moreover, York had been retired for three years before he applied for the position while Heags had the more recent experience, and both had long tenures, 38 years and 30 years respectively, with the VA. Choosing one qualified candidate over another does not constitute age discrimination and nothing in the record points directly or indirectly to age discrimination. *Stone v. Ballard*, 526 F. App'x 688, 692 (7th Cir. 2013) ("Putting the two candidates side by side, a reasonable person could prefer O'Hare's completed college education, knowledge of government, technology and communication skills, and past work inside the City's Office of Code Compliance to Stone's admittedly substantial experience in one construction trade and his plumbing-inspector certification. We will not second-guess this reasonable judgment.").

Finally, even assuming that York had made out a prima facie case of age discrimination under the indirect method, he has not demonstrated, for the reasons stated above, that Defendant's reason for not hiring him, *i.e.*, he was not a top scorer after the initial interviews by the panel, was pretextual or unworthy of credence. As the Seventh Circuit has observed, in the employment discrimination context, "when all is said and done, the fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014). Because York has failed to point to any evidence from which a jury could conclude that he would have been hired but for his age, Defendant's motion for summary judgment on the age discrimination claim is granted.

B.    Retaliation

"'[U]nlawful retaliation occurs when an employer takes an adverse employment action against an employee for opposing impermissible discrimination.'" *Smith v. Bray*, 681 F.3d 888,

14

896 (7th Cir. 2012) (quoting *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003)). According to York, Burks was aware that York had engaged in "protected activity," which York fails to delineate, but which the Court assumes to be York's prior EEOC charges and federal claims alleging discrimination. Like discrimination, retaliation may be established by either the direct or indirect method of proof. *Coleman*, 667 F.3d at 859. Under the direct method of proof, a plaintiff must show that: (1) he engaged in a protected activity; (2) the defendant took an adverse employment action against him; and (3) there was a causal connection between his protected activity and the adverse employment action. *See Tank v. T-Mobile USA, Inc.*, 758 F.3d 800, 807 (7th Cir. 2014). To establish a prima facie case of retaliation under the indirect method, York must satisfy the first two elements of the direct method and further show that: (1) he was meeting the employer's legitimate expectations; and (2) he was treated less favorably than a similarly situated employee who did not engage in statutorily protected activity. *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 883 (7th Cir. 2014).

Under the direct method, York fails to establish any causal link between his protected activity and Burks' failure to hire him. York contends that his non-selection for the EMS position was the "first time Burks had a chance to retaliate against York" and that Burks and Rene, his assistant, had discussed York's prior protected activity before they proceeded with the selection panel "for cover." (Pl.'s Resp., Dkt. # 42, at 13.) However, the passage of weeks or months following the protected activity "mitigate[s] against allowing an inference of causation based on suspicious timing." *Kidwell v. Eisenhauer*, 679 F.3d 957, 967 (7th Cir. 2012).

Moreover, while "[s]uspicious timing can sometimes raise an inference of a causal connection, . . . temporal proximity alone is 'rarely sufficient' to establish causation." *Castro v.*

15

*DeVry Univ., Inc*., 786 F.3d 559, 565 (7th Cir. 2015) (quoting *O'Leary v. Accretive Health, Inc*., 657 F.3d 625, 635 (7th Cir. 2011)); *see also Povey v. City of Jeffersonville, Ind*., 697 F.3d 619, 624 (7th Cir. 2012) (finding plaintiff's termination three weeks after filing a complaint, by itself, not sufficient to create a genuine issue of material fact to support a retaliation claim)*; Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008) ("Evidence of temporal proximity, however, standing on its own, is insufficient to establish a causal connection for a claim for retaliation"); *E.E.O.C. v. Yellow Freight Sys.*, 253 F.3d at 943, 952-53 (7th Cir. 2001) (affirming summary judgment in favor of defendant in part because six-week gap between filing of EEOC charge and termination was insufficient to establish retaliation); *Sauzek v. Exxon Coal USA, Inc*., 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation."); *Jasmantas v. Subaru-Isuzu Auto., Inc*., 139 F.3d 1155, 1157-58 (7th Cir. 1998) (holding three-month gap between employee's filing of EEOC charge and her discharge was insufficient to link filing of the charge to termination without other evidence). York points to no record evidence supporting his contention that Burks and Rene had discussed York's prior protected activity or used a selection panel for "cover." To the extent that York relies on the circumstantial evidence described above, it fails to establish evidence of retaliation for the reasons already stated. Therefore, York's retaliation claim fails to the extent that he attempts to prove it under the direct method.

Under the indirect method, York fails to demonstrate that he was treated less favorably than a similarly-situated employee who did not engage in protected activity. Even assuming York had succeeded in establishing a prima facie case of retaliation under the indirect method, he has not demonstrated that Defendant's reasons for not hiring him were a lie.

**IV.	Conclusion**

For the reasons stated above, the Court grants Defendant's summary judgment motion on both the age discrimination and retaliation claims.  Civil case terminated.

**Date**: April 26, 2016

_____
**Ronald A. Guzmán**
**United States District Judge**